**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**MAURICE STANSBERRY**                                                           **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO. 4:20-CV-082-DMB-JMV**

**ERIC BILBRO and
REGINA CROCKETT**                                                           **DEFENDANTS**

---

**DEFENDANT ERIC BILBRO'S MEMORANDUM
IN SUPPORT OF SUMMARY JUDGMENT**

---

**COMES NOW DEFENDANT,** Eric Bilbro, by counsel, and respectfully files this his Memorandum in Support of his Motion for Summary Judgment pursuant to Rule 7.2(d) of the Uniform Local Rules of the United States District Court for the Northern and Southern Districts of Mississippi, as follows:

**I.  INTRODUCTION**

While on patrol, Deputy Bilbro saw a car and a suspect he believed had been involved in a drive-by-shooting earlier that night.  Three other men, including the Plaintiff, were in the same car. Deputy Bilbro and his partner decided to question the men.  When he approached the car, Deputy Bilbro saw a hand gun, which the Plaintiff, Maurice Stansberry, admitted was his.  Because of the dangerous nature of the suspected crime, the presence of a gun, and the number of suspects compared to officers, Deputy Bilbro, and his fellow officer, detained the suspects while other investigators could arrive.

While they were detained, Deputy Bilbro ran the gun and other computer checks on

1

Stansberry. When his Triple I came back, the dispatcher reported to them that he was a felon. Based on this information , and his admission that the gun was his, Stansberry was arrested for being a felon in possession of a firearm. Deputy Bilbro took Stansberry back to the station and booked him. Unbeknownst to Deputy Bilbro at the time, the dispatcher had made a mistake, and Stansberry was not a felon, as the felony conviction on his record was from when he was a juvenile, not an adult. Nonetheless, Deputy Bilbro acted reasonably under the information as he knew it at the time and is entitled to qualified immunity.

Stansberry alleges that Deputy Bilbro is liable to him for an unreasonable seizure, use of force, and detention, in addition to his false arrest, but his claims must fail for two reasons. Most importantly, his claims must fail because Deputy Bilbro is entitled to qualified immunity on all of his claims. This should end this Court's inquiry. If it does not, an independent intermediary reviewed Stansberry's charges and found that probable cause existed for his arrest. For these reasons, this Court should dismiss his claims with prejudice.

## II. UNDISPUTED FACTS

On the night of June 22, 2019, Deputy Bilbro knew that he was to be on the look out ("BOLO") for a small red car that was allegedly involved in a drive-by shooting.[1] Additionally, the BOLO stated that Jessie Burks was a passenger in the small red car and was one of the suspects in the drive by.[2] Deputy Bilbro and his partner, Master Sergeant Wise, were on patrol that night when

---

[1]**[Doc. 29-6, ¶4]**; Exhibit C, Eric Bilbro deposition, Pg. 21; Exhibit F, Coahoma County Sheriff's Department Offense Report, 6/23/19; Exhibit G, Coahoma County Sheriff's Department Shift Activity Report, 6/22/19.

[2]**[Doc. 29-6, ¶4]**; Exhibit C, Eric Bilbro Deposition, Pg. 21; Pg. 71; Exhibit F, Coahoma County Sheriff's Department Offense Report, 6/23/19; Exhibit G, Coahoma County Sheriff's Department Shift Activity Report, 6/22/19..

they drove through the Coldwater Apartments.[3] There, Deputy Bilbro spotted a small red car with

Jessie Burks, who he knew from previous law enforcement run-ins, in its passenger seat.[4]

Unsurprisingly, he and Master Sergeant Wise detained the car and all the people in it, because the

vehicle fit the description of the BOLO, and Jessie Burks was not only in the car but still in the

passenger seat.[5]

Plaintiff Stansberry was in the car with Burks and two other men.[6] Deputy Bilbro had

previously arrested one of the other two men.[7] As Deputy Bilbro approached the car, he shined his

flashlight into the car, to get a better view of who, or what, was in the vehicle.[8] When he did, he

noticed a gun sticking out of the pocket on the back of the front passenger seat.[9] Plaintiff Stansberry

was sitting in the back passenger seat, meaning the gun was in the seat pocket directly in front of

him.[10] At that point, Deputy Bilbro instructed the Plaintiff not to touch the gun and immediately got

him out of the car.[11]

Once Deputy Bilbro got Stansberry out of the car, he handcuffed Stansberry and asked him

---

[3] **[Doc. 29-6]** at ¶ 5.

[4] Exhibit C, Bilbro Deposition, Pgs. 22-24; Pg. 69.

[5] *Id*. pg. 26, lns. 9-17.

[6] **[Doc. 29-6]** at ¶ 5.

[7] *Id.* at ¶ 6.

[8] Exhibit C, Bilbro Deposition, Pgs. 27-28.

[9] *Id*. pg. 27, lns. 6-22.

[10] *Id.*

[11] *Id*. pg. 27, ln. 24-pg. 30.

3

who the gun belonged to.[12] Deputy Bilbro did this because "[i]t's a bad situation, a shooting, a shooting situation, so that's serious, so we're already outnumbered. We don't know what they've got, so that's why we detain people."[13]   There is no dispute that Stansberry admitted the gun was his.[14]  Next, Deputy Bilbro and Master Sergeant Wise got the other three men out of the car, secured the scene, and made sure there were no other guns or dangerous weapons in the vehicle.[15]  They separated the men, placing two on one side and two on the other side.[16]

Next, Deputy Bilbro radioed  dispatch and had it run the serial number on the gun to see if it was stolen or had been involved in any crimes.[17]  This is standard operating procedure when a firearm is found.[18] But in this case, Deputy Bilbro had a particular belief that this gun might have been used in the drive-by shooting earlier, as it had been found in the red vehicle with Jessie Burks.[19] At some point, dispatch reported back that it did not have a record on the gun.[20]

After running the gun, Deputy Bilbro radioed for Chief Bee and Investigator Lewis to come

---

[12]*Id.*, pg. 31, lns. 2-11.

[13] *Id.*, pg. 31, lns. 23-23.

[14]*Id.*, pg. 31, lns. 2-11.

[15] *Id.*, pg. 34, ln. 21-pg. 35, 17.

[16] *Id.*, pg. 35, lns, 18-25.

[17] *Id.*, pg. 32, lns. 15-24.

[18] *Id.*, pg. 36.

[19] *Id.*, pgs. 36-37.

[20] *Id.*, pg. 41, ln. 18-20.

to the scene.[21]  Investigator Lewis was the Coahoma County Sheriff's Department Investigator assigned to the drive-by shooting, and he would be the proper person to interview the suspects.[22] Deputy Bilbro did not interview Plaintiff Stansberry while waiting for the other officers to arrive, as this was not his proper role.[23]  He did, however, continue to run computer checks on Stansberry.[24]

Once Chief Bee and Investigator Lewis arrived at the scene, they spoke to the suspects.[25] Investigator Henry Lewis spoke to Plaintiff Stansberry.[26]  After Chief Bee arrived, Deputy Bilbro ran a Triple I on Stansberry.[27]  The dispatcher that evening was Regina Crockett, who read the Triple I back at the station and radioed back to the officers at the scene.[28]  Officers on the scene do not get a copy of the Triple I - these only go to dispatch.[29]  When the Triple I was run, "the dispatcher advised [Stansberry] was a convicted felon."[30]  Deputy Bilbro does not remember whether dispatch informed anyone on the scene about any of the specifics of Stansberry's charges, only that he was

---

[21] *Id.*, pg. 37, lns. 6-9.

[22] *Id.*, pg. 37, lns. 6-20.

[23] *Id.*, pg. 37, lns. 21-23.

[24] **[Doc. 29-6]**, ¶10.

[25] Exhibit C, Bilbro deposition, Pg. 42, Lns. 1-17.

[26] *Id.*, pg. 42, lns. 12-17.

[27] *Id.*, pg. 44, lns. 8-14.

[28] **[Doc. 29-8]**, ¶3.

[29] Exhibit D, 30(b)(6) Deposition, Pg. 32, Lns. 1-4.

[30] Exhibit C, Bilbro Depo. Pg. 44, Lns. 13-14.

a convicted felon.[31]  According to Chief Bee, Crockett reported to them that Stansberry was a felon and that "he had a FBI number. I know- I remember her saying that."[32]

Once they heard that Stansberry was a felon, Deputy Bilbro and Chief Bee made the decision to arrest him.[33]  When  he arrived back at the station with Stansberry, Deputy Bilbro booked him in.[34]  Deputy Bilbro picked up the Triple I and then wrote out his report on the incident, but because this was now a felony, he passed the case off to Investigator Lewis.[35]  Deputy Bilbro provided Investigator Lewis with the Triple I report and the arrest report.[36]  According to Deputy Bilbro, it was Investigator Lewis's ultimate decision at this point whether to charge Stansberry with  the felony.

Investigator Henry Lewis was the investigator responsible for Plaintiff Stansberry's case. He was also on the scene at Coldwater River Road Apartments that night.[37]  But he arrived after the Triple I was run.[38]  While Investigator Lewis was there, Plaintiff Stansberry told him that he, Stansberry, was not a felon.[39]  However, it was Investigator Lewis' understanding that at that time the Plaintiff was already under arrest.[40]  On the scene, Investigator Lewis did not have any role in

---

[31]*Id.*, pgs. 44-45.

[32] **[Doc. 29-12],** pg. 46, lns. 17-24].

[33] Exhibit C, Bilbro Deposition, Pg. 48, Lns. 13-18; Exhibit D, 30(b)(6) Deposition, Pg. 47, Lns. 1-10.

[34] Exhibit C, Bilbro Deposition, Pg. 55, Lns. 11-23.

[35] *Id.* pgs. 54-55.

[36] *Id*. pgs.55-56.

[37] Exhibit E, Lewis Deposition, Pg. 30.

[38] Exhibit E, Lewis Deposition, Pgs. 36-37.

[39] *Id.* pg. 37, lns. 4-21.

[40] *Id.* pg. 38, lns. 20-24.

arresting Stansberry or determining whether he was a felon. [41]

On June 24, 2019, the Plaintiff's initial court appearance was held before Justice Court Judge Burks Rogers.[42] The Initial Court Appearance Order following his appearance included a determination by Judge Rogers that, "If Defendant was arrested without a warrant, Probable Cause for the arrest has been determined to have existed."[43] Plaintiff's bond was set at $2,500.00, was paid, and he bonded out on June 24, 2019.[44]

Investigator Lewis was instructed by Chief Bee to determine whether Plaintiff Stansberry was a felon, around June 24, 2019.[45] To do so, first he looked at the Plaintiff's Triple I.[46] He also spoke to another Coahoma County dispatcher, named Lester, and asked her questions about the Triple I.[47] Next, Investigator Lewis reached out to the Joliet Indiana Police Department, where Stansberry's felony charges came from, to determine the exact resolution of these charges.[48] He received a fax back from Joliet Police Department on June 28, 2019, confirming that Plaintiff's felony conviction occurred when he was a juvenile.[49]

Plaintiff was set to appear in Court on July 3, 2019, and at that time, the charge against

---

[41] *Id.* pg. 38, ln. 23-pg. 39, ln 5.

[42] Exhibit B, at 1.

[43] *Id.*

[44] Exhibit H, at 2.

[45] Exhibit E, Lewis Deposition. Pg. 55, Lns. 9-11; Pg. 57.

[46] *Id.* pg. 55.

[47] *Id.* pg. 35, lns. 2-6.

[48] *Id.* pgs. 46-49.

[49] Exhibit E, Lewis Deposition, Ex. 7.

Plaintiff was dismissed, as, by then, Inspector Lewis had confirmed with the Joliet Police Department that Plaintiff was not an adult felon.[50]

Initially, Plaintiff filed this suit against only Deputy Eric Bilbro, individually, on May 4, 2020.[51]  Later, Plaintiff amended his Complaint on February 5, 2021, adding Dispatcher Crockett, individually, as a defendant.[52]  Plaintiff has never filed suit against the Coahoma County Sheriff's Department.  In his suit against Deputy Bilbro, Plaintiff alleges the following claims: (1) unreasonable seizure, use of force, and detention, and (2) false arrest.

## III.  AUTHORITIES

### A.    SUMMARY JUDGMENT STANDARD

This Court is familiar with the summary judgment standard under *Fed. R. Civ. P*. 56 and *Celotex Corp. v. Catrett,* such that it need not be repeated here.[53]

### B.    QUALIFIED IMMUNITY

Defendant Deputy Bilbro  is  presumed to enjoy qualified immunity; abrogation of qualified immunity is the exception, not the rule.[54]  Public officials, such as sheriff's deputies like Deputy Bilbro acting within the scope of their official duties, are shielded by qualified immunity from claims of civil liability, including Section 1983 claims.[55] Qualified immunity is a viable defense unless the

---

[50] Exhibit I, Coahoma County Justice Court Abstract, at 1.

[51] **[Doc. 1]**.

[52] Amended Complaint, **[Doc. 36].**

[53] 477 U.S. 317, 323 (1986).

[54]  *Trevino v. City of Fort Worth,* 2017 WL 3704511, at *4 (N.D. Tex. Aug. 25, 2017); *Foster v. City of Lake Jackson,* 28 F.3d 425, 428 (5th Cir. 1994).

[55] *Morris v. Dillard Dept. Stores, Inc*., 277 F.3d 743, 753 (5th Cir. 2001).

existence of a constitutional violation is "beyond debate."[56]  When qualified immunity is claimed, the burden falls on the plaintiff to show it is not applicable.[57]

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[58]  Thus, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."[59]  When evaluating a qualified immunity defense, courts conduct a "well-known" two-prong inquiry.[60]  A plaintiff must allege a violation of a constitutional right and then must show that the right was clearly established in light of the specific context of the case in order to overcome a qualified immunity defense.[61]  Furthermore, courts have the discretion to "address these two elements in either order, and need not proceed to the second where the first is resolved in the negative."[62]

In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not.[63]  Importantly, if public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled

---

[56] *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).

[57] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

[58] *Mullenix v. Luna*, 577 U.S. 7, 10 (2015) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)).

[59] *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[60] *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 490 (5th Cir. 2001).

[61] *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014).

[62] *Id.* (citations omitted).

[63] *Elder v. Holloway,* 510 U.S. 510, 512 (1994).

9

to qualified immunity.[64] "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner."[65]

In applying the two-part test to analyze a claim of qualified immunity, the threshold question is "whether Plaintiff's allegations establish a constitutional violation."[66] If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."[67] However, "if a violation could be made out, the next sequential step is to ask, whether that right was clearly established."[68] The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [deputy] that his conduct was unlawful in the situation confronted."[69] Here, Plaintiff Stansberry's claim against Defendant Deputy Bilbro fails as to both parts of this test.

### 1. Plaintiff Stansberry Fails to Establish a Constitutional Violation.

Plaintiff Stansberry brought suit under 42 U.S.C. § 1983 alleging unreasonable seizure, use of force, detention, and false arrest against Defendant Deputy Bilbro under the Fourth Amendment. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses,

---

[64] *Mullenix v. Luna,* 577 U.S. 7, 10 (2015); *Malley v. Briggs,* 475 U.S. 335, 341 (1986); *Fraire v. City of Arlington,* 957 F. 2d 1268, 1273 (5th Cir. 1992).

[65] *Malley,* 475 U.S. at 341.

[66] *Hope v. Pelzer,* 536 U.S. 730, 736 (2002).

[67] *Saucier v. Katz,* 533 U.S. 194 (2001); *see also, Pearson v. Callahan,* 555 U.S. 223 (2009)(holding that "order of battle" outlined in *Saucier,* is not mandatory in every instance).

[68] *Saucier,* 533 U.S. at 201.

[69] *Id.* at 202.

10

papers, and effects, against unreasonable searches and seizures."[70]  Plaintiff claims that Defendant Deputy Bilbro's initial seizure, handcuffing, and continued detention of the Plaintiff violated the Plaintiff's right to be free from unreasonable seizure, force, and detention.[71]  Additionally, Plaintiff Stansberry alleges that Defendant Deputy Bilbro is liable to him under a Fourth Amendment claim for false arrest.[72]  All of these claims must fail.

### a.    No Unreasonable Seizure, Use of Force, or Detention

Plaintiff's first claim must fail because the undisputed evidence shows that Defendant Deputy Bilbro did not engage in an unreasonable seizure, use of force, or detention under the Fourth Amendment.  Plaintiff alleges that "Deputy Bilbro's initial seizure, handcuffing, and continued detention of Plaintiff violated Plaintiff right to be free from unreasonable seizure, force, and detention as guaranteed by the Fourth Amendment".[73] But a review of the undisputed facts shows that this is not the case.

### i.    The Initial Seizure was not Unreasonable.

Deputy Bilbro's initial seizure, based on the information available to him at the time, was objectively reasonable.  Seizures short of an arrest require reasonable suspicion.[74]  The stop of a vehicle and detention of its occupants constitutes a "seizure" under the Fourth Amendment.[75]

---

[70]U.S. Const. amend. IV.

[71] **[Doc. 36**, ¶77-87]

[72] **[Doc. 36**, ¶88-93]

[73] **[Doc. 36]**, ¶84.

[74] *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

[75] *Id.* at 19 (recognizing that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person).

Probable cause is not a prerequisite for a brief investigative detention; however, the law enforcement officer must have "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot'" because the Fourth Amendment requires "some minimal level of objective justification" for making an investigative stop.[76]

"The presence or absence of reasonable suspicion must be determined in light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time of the decision to stop a person."[77] Law enforcement officers who reasonably but mistakenly conclude that reasonable suspicion or probable cause is present are entitled to qualified immunity.[78]

To determine whether, like here, a seizure was objectively reasonable, courts consider "whether the totality of the circumstances justified [that] particular sort of search or seizure."[79] To do so, courts use a two-part inquiry: "(1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place."[80] Here, Deputy Bilbro's was both.

Deputy Bilbro's action was justified at its inception. Deputy Bilbro may detain a person for a brief, investigatory stop consistent with the Fourth Amendment when he has a "reasonable

---

[76] *United States v. Sokolow*, 490 U.S. 1, 7(1989) (citations omitted).

[77] *United States v. Cortez*, 449 U.S. 411, 417 (1981); *see also United States v. Silva*, 957 F.2d 157, 160 (5th Cir. 1992).

[78] *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).

[79] *Flores v. City of Palacios*, 381 F.3d 391, 398-99 (5th Cir. 2004) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

[80] *United States v. Lopez-Moreno*, 420 F. 3d 420, 430(5th Cir. 2005)(citing *Terry*, 392 U.S. at 19-20).

suspicion, grounded in specific and articulable facts ..." that allows [him] to conclude the suspect is wanted in connection with criminal behavior.[81]  Reasonable suspicion has been defined simply as "a particularized and objective basis" for suspecting the person stopped of criminal activity.[82]  Moreover, parked vehicles may be the subject of an investigative stop.[83]

Plaintiff's claim fails because here Deputy Bilbro had reasonable suspicion, grounded in specific and articulable facts, that the Plaintiff, his cohorts, and the car they were in were involved in a drive-by shooting that same night.[84]  Here, Deputy Bilbro discovered Plaintiff in a small red car with Jessie Burks.[85]  Prior to discovering Plaintiff Stansberry, Deputy Bilbro had been actively looking for both a red car and Jessie Burks, because of their alleged involvement in a drive-by shooting that happened that very night.[86]  Thus, it cannot be said that the initial seizure was objectively unreasonable. These facts alone provide "a particularized and objective basis" for suspecting the vehicle in question and its occupants of criminal activity.

Second, Deputy Bilbro's detention was reasonably related in scope to the circumstances which justified the interference in the first place. "'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,he may conduct a limited protective search for concealed

---

[81] *Terry*, 392 U.S. at 19-20.

[82] *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (quoting *United States v. Cortez*, 449 U.S. 411, 417-418 (1981)).

[83] *United States v. Richardson*, 2017 U.S. Dist. LEXIS 59403, *7 (M.D. La. April 18, 2017).

[84] Exhibit C, Bilbro Deposition, Pgs. 69-72.

[85] [Doc. 29-6, ¶4]; Exhibit C, Bilbro Deposition, Pg. 21; Pg. 71.

[86] *Id*.

weapons."[87] This is exactly what happened here. Here, Deputy Bilbro testified that after seeing the handgun in the seat pocket in front of the Plaintiff, he requested that the Plaintiff come out, and he handcuffed him.[88] He did this to secure the scene and so that he could check for more potential weapons.[89] An officer may search the areas of an automobile where a weapon may be placed "if the officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons."[90] After Deputy Bilbro had already found one gun in a car that he suspected of being involved in a drive-by, he had every right to detain Stansberry while he continued his search of the same vehicle to see if there were more weapons in the car. Plaintiff's claim must fail.

### ii. Deputy Bilbro's handcuffing and continued detention of Plaintiff were reasonable.

Plaintiff also claims that his Fourth Amendment rights were violated when Defendant Deputy Bilbro handcuffed him and continued to detain him.[91] This claim too is without merit. As noted above, a police officer may conduct a limited search of a suspect during a brief stop to discover weapons that might be used to assault the officer if "a reasonably prudent [person] in the

---

[87] *United States v. Tuggle*, 284 F. App'x 218, 223 (5th Cir. 2008) (quoting *Terry*, 392 U.S. at 27).

[88] Exhibit C, Bilbro Deposition, Pg. 31, Lns. 2-11.

[89] *Id*.

[90] *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (quoting *Michigan v. Long*, 463 U.S. 1032(1983) (internal citations and quotation marks omitted)).

[91] **[Doc. 36, ¶80]**.

14

circumstances would be warranted in the belief that his safety or that of others was in danger."[92] Similarly, an officer may handcuff a suspect while investigating criminal activity if doing so is reasonable to conduct the investigation safely.[93] Such a belief must be founded on specific and articulable facts.[94]

Here, all of these issues were present in full force. As Deputy Bilbro testified, he removed Stansberry from the car and placed him in handcuffs after finding the gun because "[i]t's a bad situation, a shooting, a shooting situation, so that's serious, so we're already outnumbered. We don't know what they've got, so that's why we detain people."[95] At that time, Deputy Bilbro had already located one gun in the car, he had no way of knowing if there might be more.[96] There were four suspects in the car- there were currently only two officers on the scene, he and his partner.[97] And Plaintiff Stansberry had the easiest access to the gun.[98] Clearly, Deputy Bilbro and his partner had a reasonable belief that their safety might be in danger because of the gun, the earlier drive-by, Jessie Burks' presence in the car, and Deputy Bilbro's previous history with another occupant of the car.[99] Therefore, it was reasonable for Deputy Bilbro to place the Plaintiff in handcuffs.

---

[92] *United States v. Sanders,* 994 F.2d 200, 203 (5th Cir. 1993) (citing *Terry*, 392 U.S. at 27).

[93] *See United States v. Sanders*, 994 F.2d 200, 206–07 (5th Cir. 1993)

[94] *Id.*

[95] *Id.*, pg. 31, lns. 23-23.

[96] *Id*.

[97] *Id*. pgs. 35-36.

[98] *Id*. pg. 72, lns. 1-7.

[99] **[Doc. 29-6, ¶ 7]**

15

Additionally, Deputy Bilbro's detention of the Plaintiff after he placed the Plaintiff in handcuffs was also reasonable. When an officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused a stop, he may further detain its occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion.[100] A detention during a valid stop does not violate the detainee's Fourth Amendment rights even when it exceeds the amount of time needed to investigate the initial stop, so long as "(1) the facts that emerge during the police officer's investigation of the original offense create reasonable suspicion that additional criminal activity warranting additional present investigation is afoot, (2) the length of the entire detention is reasonable in light of the suspicious facts, and (3) the scope of the additional investigation is reasonable in light of the suspicious facts, meaning that it is reasonable to believe that each crime investigated, if established, would likely explain the suspicious facts that gave rise to the reasonable suspicion of criminal activity."[101]

Here, Plaintiff's claim that Defendant Deputy Bilbro exceeded the scope of the initial seizure through continued detention likewise fails. "[A]n officer may examine driver's licenses and vehicle registrations and run computer checks as part of his investigation of the circumstances that originally caused the stop."[102] Additionally, an officer is permitted to ask questions on subjects unrelated to the circumstances that caused the stop, so long as the unrelated questions do not extend the duration of the stop.[103] "Thus, no Fourth Amendment harm is done where the officer asks the occupants of a

---

[100] *United States v. Pack*, 612 F.3d 341, 349-50 (5th Cir.), opinion modified on denial of reh'g, 622 F.3d 383 (5th Cir. 2010).

[101] *Id.* at 357-58.

[102] *Id.* at 350.

[103] *Id.*

16

vehicle questions that are unrelated to his reason for stopping the vehicle while waiting for routine computer checks to be processed."[104]

Again, Deputy Bilbro encountered Plaintiff while investigating a drive-by shooting that happened that very night. Plaintiff was in a vehicle matching the description of one of the vehicles used in the drive-by, was with a named suspect in the drive-by, and had a hand gun on him.[105] This undoubtedly created reasonable suspicion that additional criminal activity warranting additional present investigation was afoot. Obviously, Deputy Bilbro should have and did run the Plaintiff's information through the Sheriff's Department computers. Additionally, he had a reasonable basis to detain him until the officers working the drive-by could come and question him personally.

During the stop, Defendant Deputy Bilbro followed standard procedures following the discovery of a car alleged to be involved in a crime and location of a gun. [106] This included running a Triple I on the Plaintiff.[107] It is uncontested that Deputy Bilbro did not have the authority to run a Triple I without authorization from someone higher in rank. [108] Deputy Bilbro contacted Chief Bee and Investigator Lewis to come to the scene to interview the Plaintiff and so that one of them could authorize the Triple I.[109] Plaintiff's claim for handcuffing and detention must fail.

---

[104] *Id.*

[105] Exhibit C, Bilbro Deposition, Pgs. 69-72.

[106] **[Doc. 29-6**, ¶10-11].

[107] **[Doc. 29-6**, ¶11].

[108] **[Doc. 29-6**, ¶12]; **[Doc.. 29-8]**, Crockett Affidavit, ¶5; **[Doc. 29-7]**, Bee Affidavit, ¶7-8; Exhibit D, 30(b)(6) Deposition, Pg. 45; Lns. 3-18; Exbhit C, Bilbro Deposition, Pg. 44; Lns. 8-15;

[109] Exhibit C, Bilbro Deposition, Pgs. 41-44.

17

### iii. Plaintiff fails to allege a use of force claim.

It is unclear from Plaintiff's Amended Complaint what, exactly, Plaintiff's unreasonable use of force claim is. To the extent that Plaintiff alleges one, it too much fail.. To determine the objective reasonableness of the force used by a law enforcement officer, courts balance the amount of force used against the need for force.[110] This balancing test "requires careful attention to the facts and circumstances of each particular case."[111] As Plaintiff has failed to specifically identify any force that was used against him, Plaintiff's unreasonable use of force claim fails on its face.

### b. Deputy Bilbro Reasonably Relied on the Information Available to Him; Thus, Plaintiff's False Arrest Claim Must Fail.

Plaintiff's false arrest claim against Defendant Deputy Bilbro must also fail as Defendant Deputy Bilbro acted properly in effectuating the arrest. To establish that Defendant Deputy Bilbro violated Plaintiff's constitutional rights by arresting him, Plaintiff must show that Deputy Bilbro lacked probable cause.[112] Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.[113]

"A showing of probable cause requires much less evidence than does a finding sufficient to convict."[114] In fact, the officer need only know with "fair probability" that the suspect committed the

---

[110] *Flores v. City of Palacios*, 381 F.3d 391, 398-99 (5th Cir. 2004).

[111] *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

[112] *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir.2004).

[113] *Braswell v. Jackson Cty., Mississippi*, 2016 WL 299719, at *4 (S.D. Miss. Jan. 22, 2016).

[114] *Id.* (citing *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988)).

offense, "which requires more than a 'bare suspicion' but less than a preponderance of the evidence."[115] Additionally, although the probable cause inquiry is an objective one, it must nonetheless be conducted in light of the actual facts known to the officer at the time of the arrest.[116] Even if probable cause was lacking, law enforcement officers who "reasonably but mistakenly conclude that probable cause is present are entitled to immunity."[117]

The facts known to Defendant Deputy Bilbro at the time of the arrest were that Plaintiff was found in a car matching the description of one allegedly involved in a drive-by shooting that took place earlier that evening.[118] Further, he was in the company of a named suspect in that shooting, Jessie Burks.[119] Both Jessie Burks and another occupant of the car were well known to law enforcement, including Deputy Bilbro.[120] And, most importantly, Plaintiff had admitted that a handgun was his and dispatch had reported that the Plaintiff was a felon.[121] Based on all of this, there was more than enough probable cause to arrest the Plaintiff for being a felon in the possession of a firearm.

Accordingly, when examining Deputy Bilbro's judgment, "the totality of the

---

[115] *Allemang v. Louisiana*, 2020 U.S. Dist. LEXIS 81210, at *12 (W.D. La. May 7, 2020) (citing *Holton v. Mohon*, 684 F.Supp. 1407 (N.D. Tex. 1987) (citations omitted)); and *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, (5th Cir. 2004)).

[116] *Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007) (internal citations omitted).

[117] *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).

[118] Exhibit C, Bilbro Deposition, Pgs. 69-72.

[119] *Id*.

[120] *Id*.

[121] **[Doc. 29-6]**, Bilbro Affidavit, ¶ 14.

circumstances-the whole picture-must be taken into account."[122] Under the totality of the facts and circumstances present here, an objective officer situated as was Deputy Bilbro could have reasonably relied on the information reported to him by the dispatcher. Courts have routinely held that officers can rely on information provided to them by other law enforcement officers and dispatchers for probable cause.[123] Additionally, subsequent evidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest because "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."[124] Therefore, Deputy Bilbro, based on the totality of the facts and circumstances within his knowledge at the moment of arrest, reasonably concluded that the Plaintiff was committing an offense. Thus, Deputy Bilbro had probable cause at the moment of the arrest, negating Plaintiff's false arrest claim.

### 2. The constitutional violation alleged is not clearly established.

In the case at hand, the Court need not reach this analysis as Stansberry has failed to meet the first prong of stating any constitutional violation.  But, even if this Court were to find that Deputy Bilbro's actions violated Stanberry's Fourth Amendment rights, which they did not, Stansberry's claim must still fail because he cannot demonstrate an "'existing precedent [that] place[s] the . . . constitutional question[s] *beyond debate*.'"[125] "A clearly established right is one that is 'sufficiently

---

[122] *United States v. De Leon-Reyna*, 930 F.2d 396, 399 (5th Cir. 1991) (citations omitted).

[123]  *See, e.g., United States v. Valdes*, 403 Fed. App'x 885, 890 (5th Cir. 2010); *Jacobson v. City of N. Richland Hills*, 2006 WL 1317014, at *4 (N.D. Tex. May 15, 2006); *Stranjac v. Jenkins*, 2012 U.S. Dist. LEXIS 125613, *23-24 (M.D. La. Spet. 5, 2021).

[124] *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009) (citing *Illinois v. Gates*, 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

[125] *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (emphasis in original) (en banc).

clear that every reasonable official would have understood that what he is doing violates that right.'"[126] "Clearly established law must be particularized to the facts of a case. Thus, while a case need not be directly on point, precedent must still put the underlying question beyond debate."[127] "District courts in this Circuit have been told that 'clearly established law comes from holdings, not dicta.'"[128] Courts "are to pay close attention to the specific context of the case" and not "define clearly established law at a high level of generality."[129]

Moreover, "[i]t is [Stansberry's] burden to find a case in his favor that does not define the law at a high level of generality."[130] To meet his high burden, Stansberry must "point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."[131] Stansberry cannot do this. As such, his claims against Deputy Bilbro must be dismissed.

## C. INDEPENDENT INTERMEDIARY DOCTRINE

Plaintiff's claims against Defendant Bilbro must also fail because a Justice Court Judge found probable cause for Plaintiff's arrest.[132] Plaintiff alleges that Defendant Bilbro is liable for his

---

[126]*Mullenix v. Luna,* 577 U.S. 7, 10 (2015)(citation omitted).

[127] *Id.* (quotations and citation omitted).

[128] *Jamison,* 476 F. Supp. 3d at 416 (quoting *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) (citations omitted)).

[129] *Id.* (quoting *Anderson v. Valdez*, 913 F.3d 472, 476 (5th Cir. 2019)).

[130] *Id.* (quoting *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019)).

[131] *Id.* (quoting *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017)).

[132] Exhibit B - Initial Court Appearance Form.

false arrest.[133]   However, because here a justice court judge found that "Probable Cause for [Stansberry's] arrest has been determined to have existed," the doctrine of independent intermediary applies.[134]

Under this doctrine, "*even* an officer who acted with malice . . . will not be liable if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's 'independent' decision 'breaks the causal chain' and insulates the initiating party."[135]   Plaintiff *does not* allege Defendant Bilbro acted with any malice.

This is true even where, like here, the independent intermediary's action occurred after the arrest, and even if the arrestee was never convicted of any crime. [136] This doctrine is most often applied and accepted in wrongful arrest cases, like this one, where the issue is probable cause.[137] "The causal chain is not broken, however, '*if the plaintiff affirmatively* shows that the deliberations of that intermediary were in some way tainted by the actions of the defendants.'"[138] Stansberry cannot carry his affirmative burden here.  In fact, there are no allegations that Defendant Bilbro misrepresented any information before the Justice Court Judge or did anything which would have tainted this process.[139]  As such, for this reason as well, all of Plaintiff's claims against Defendant

---

[133] **[Doc. 36, ¶ 90]**.

[134] Exhibit B - Initial Court Appearance Form.

[135] *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (quoting *Smith v. Gonzales*, 670 F.2 d 522, 526 (5th Cir. 1982)(emphasis added)).

[136] *Buehler v. City of Austin/Austin Police Dep't*, 824 F. 3d 548, 554 (5th Cir. 2016).

[137] *Geiger v. Monroe County*, 2018 U.S. Dist. LEXIS 101198, *15-16 (N. D. Miss. June 18, 2018).

[138] *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004)(emphasis added).

[139] *See* **[Doc. 36]** *generally*.

Bilbro should be dismissed with prejudice.

## IV. CONCLUSION

The doctrine of qualified immunity protects law enforcement officers like Deputy Bilbro who must make split second decisions in the face of potential danger. Here, Deputy Bilbro relied on all of the information at his disposal in order to make reasonable decisions in the face of potential serious danger. Because Stansberry cannot allege a constitutional violation against Deputy Bilbro, his claims must fail. Additionally, even if he could, Stansberry cannot show that this constitutional violation is clearly established. Moreover, an independent intermediary reviewed Stansberry's charges and found that probable cause existed for his arrest. For all the forgoing reasons, this Court should dismiss his claims.

**NOW, THEREFORE** Defendant prays that upon consideration hereof, the Court enter its order as follows:

(A) That this Court dismiss Plaintiff's First Amended Complaint with prejudice; and,

(B) That this Court award this Defendants his attorneys' fees, costs and expenses associated with the defense of the instant civil action pursuant to 42 U.S.C. §1988.

**RESPECTFULLY SUBMITTED** this the 10th day of May, 2021.

**JACKS| GRIFFITH| LUCIANO, P.A.**

By: /s/ ***Bethany A. Tarpley***
Bethany A. Tarpley, MS Bar No. 104134
Daniel J. Griffith, MS Bar No. 8366
Attorneys for Defendant**s**

Of Counsel:

**JACKS| GRIFFITH| LUCIANO, P.A.**

150 North Sharpe Street
P. O. Box 1209
Cleveland, MS 38732
Phone No. 662-843-6171
FAX No. 662-843-6176
Email: btarpley@jlpalaw.com
dgriffith@jlpalaw.co

## CERTIFICATE OF SERVICE

I, Bethany A. Tarpley, attorney of record for Defendants, do hereby certify that I have this day caused a true and correct copy of the above and foregoing *Memorandum of Authorities in Support of Motion for Summary Judgment* to be delivered by the ECF Filing System which gave notice to the following:

> Martin R. Jelliffe, Esq.
> Adrian Mendiondo, Esq.
> Morgan & Morgan
> 4450 Old Canton Rd., Ste. 200
> Jackson, MS 39211
> Phone: (601) 503-1676
> Fax: (601) 503-1625
> Email: mjelliffe@forthepeople.com
> amendiondo@forthepeople.com
> **Attorneys for Plaintiff**
>
> Michael Carr
> Email: mcarr@carrlawpllc.com

**DATED** this 5th day of May, 2021.

/s/ ***Bethany A. Tarpley***
Bethany A. Tarpley